## Reeves's Estate.

*Wills—Trusts and trustees—Remainders—Equitable life estates—Estates pur autre vie—Living children.*

1. Where a testatrix gives her residuary estate to a trustee to pay the net income to two women friends for life, without liability for their debts, and without power of disposal by them by way of charge or anticipation, and on the death of the first her share of the income is given to the living children of two men friends "subject to the same restrictions as to liability for debts until the termination of this trust," and on the death of the survivor of the women friends, the *corpus* is given to the children of the two men friends then living, and to the issue of any of them deceased, and it appears that, at the death of the first woman friend, there were six living children of the two men friends, to whom half of the income was thereupon paid, the court will construe the testatrix's intention to be that on the death of one of the six children without issue, the share of the income paid to him should not pass to his next of kin for the duration of the trust, but should be paid to the other five children surviving.

2. In such case, the testatrix, in limiting income to living children, clearly expressed a purpose of benefiting a class, the composition of which is defined, not only as to the time of the death of the first woman friend, but also afterwards in the gift of principal, subject only to substitution in the event of the death of a member of the class of living children, leaving descendants.

Exceptions to adjudication. O. C. Phila. Co., April T., 1909, No. 651.

The facts and the provisions of the will appear from the following extract from the adjudication of VAN DUSEN, J., Auditing Judge:

Sarah Reeves died April 23, 1908, leaving a last will and testament, dated April 4, 1904, and a codicil, dated March 3, 1908, duly probated, whereby, after making certain specific and pecuniary legacies, she gave the residue of her estate to her executor in trust for the following purposes:

"To let and demise my real estate and to invest and keep invested my personal estate and to take, collect and receive the rents, issues, profits, interest and income thereof and when and as received after the payment of charges and expenses incident to this trust to pay over the same in equal shares and parts unto my friends Martha McGrath and Mary Mecke for and during all the term of their natural lives without the same being in any manner or way liable or subject to their respective debts, contracts or engagements and without the power of disposal by them by way of charge or anticipation. Upon the decease of the said Martha McGrath then to pay the share of income to

which she would have been entitled if living, unto the children of my friends J. Mortimer West, Jr., and Edward M. West then living in equal share and parts in the same manner and way and subject to the same restriction as to liability for debts until the termination of this Trust as hereinafter declared. Upon the decease of the said Mary Mecke then to pay the share of income to which she would have been entitled if living, unto her issue in the same manner and way and subject to the same restrictions as to liability for debts as I have declared as to her share of income until the termination of this Trust as hereinafter declared. In the event of the decease of the said Mary Mecke without leaving issue or leaving issue and the decease of such issue before the termination of this Trust then to pay the share of income to which the said Mary Mecke or her issue would have been entitled if living unto the said Martha McGrath for life, clear of her debts and without the power of disposal by way of charge or anticipation. Upon the decease of the Survivor of the said Mary Mecke and Martha McGrath all the trusts herein declared are to terminate and be at an end and I do then give, devise and bequeath my said residuary real and personal estate unto the children of the said Mary Mecke, J. Mortimer West, Jr., and Edward M. West then living and the issue of any who may then be deceased *per stirpes*, their heirs, executors, administrators and assigns forever."

By the codicil to her will testatrix increased certain pecuniary legacies, directed that the legacy of $1200 to her maid be paid within three months from the time of her decease, and provided that in case her friend, Jacob Snare, the executor and trustee named in her will, should die or become incapacitated before the final settlement of her estate, the Philadelphia Trust, Safe Deposit and Insurance Company of Philadelphia should be the executor and trustee.

Letters testamentary were granted the said Jacob Snare by the Register of Wills of Philadelphia County on April 30, 1908. He died Jan. 1, 1926, which necessitated the filing of this account.

Martha McGrath died Jan. 24, 1916, without issue. Mary Mecke is still living. J. Mortimer West, Jr., has three children, to wit, James Mortimer West, 3rd, Alan Asquith West and Elizabeth West. Edward M. West had three children, to wit, Mary R. Shaw, of age; Anna Janvier West, a minor, for whom Fidelity Trust Company is guardian; and Reid Lonsdale West, who died Aug. 30, 1925, intestate, unmarried and without issue, and whose next of kin, as agreed by counsel, are Edward M. West and Blanche B. West, his father and mother. Florence D. Shaw, daughter of Mary R. Shaw, is a minor without a guardian.

The question presented to the Auditing Judge is whether the income heretofore received by Reid Lonsdale West should be paid to his legal representatives or to the five remaining children of J. Mortimer West, Jr., and Edward M. West. The determination of this question depends upon whether the estate of Reid Lonsdale West is a life estate or one *pur autre vie*.

It is certain that the will makes no express gift over of any part of the income upon the death of any one of the children of J. Mortimer West or Edward M. West before the time fixed for the final distribution of the principal. It is also true that the gift to said children is made "in the same manner and way (as the gifts of income for life to Martha McGrath and Mary Mecke) and subject to the same restrictions as to liability for debts until the termination of this Trust as hereinafter declared." The phrase "until the termination of this Trust as hereinafter declared" seems to have a somewhat doubtful meaning. It may mean one of two things, either to pay

the income to the persons named until the final. termination of the trust or to pay the income without any liability for debts until the termination of the trust. Upon a strict construction of the will and following the cases of Little's Appeal, 81 Pa. 190; Spang's Estate, 49 Pa. Superior Ct. 314, and McGlinn's Estate, 77 Pa. Superior Ct. 582, a very strong argument has been advanced that by reason of there being no gift over, the interest of Reid Lonsdale West, the deceased son of J. Mortimer West, Jr., was an estate *pur autre vie*, and as such passed to his legal representatives.

Even assuming for argument's sake that the foregoing facts might establish an estate *pur autre vie* in Reid Lonsdale West, yet some doubt is cast upon this construction by reason of the fact that testatrix provided that the gift of income should be to the children of J. Mortimer West, Jr., and Edward M. West *then living;* that is, living at the death of Martha McGrath, and thereby intended that only living children should share in the income. Let us assume that Reid Lonsdale West had died prior to the death of Martha McGrath. In such an event, it is clear that the income that would otherwise have been paid to him if living would go to the living children of J. Mortimer West and Edward M. West and not to the legal representatives of Reid Lonsdale West.

But, in any event, the whole will in such cases as this must be considered. As was said by Penrose, J., in Babcock's Estate, 18 Dist. R. 453: "The duration of an estate created by will is always a question of intention, to be determined, not by the precise, literal meaning of the words, but by the effect and consequences and by its harmony with the general scheme of the will taken in its entirety; and even a strained construction will be adopted where any other would lead to an absurdity or be productive of inconvenience and great complication.".

The thought of the testatrix seems to be to take care of the living. First, there is a gift of income, after the death of Martha McGrath, to the children of J. Mortimer West, Jr., and Edward M. West then living. Then, upon the death of Mary Mecke, there is a gift of the income to her issue, and in default of issue or the death of her issue before the termination of the trust, then to Martha McGrath for life, and upon the death of the survivor of Mary Mecke and Martha McGrath, the trust terminates and the residuary estate is to be paid to the children of Mary Mecke, J. Mortimer West, Jr., and Edward M. West then living and the issue of any who may then be deceased *per stirpes.* As the gift of the principal is to the living, there is nothing in the will to show that testatrix had in mind any different disposition of the income. The parts of the will seem to harmonize if we hold that the testatrix intended that the children of J. Mortimer West, Jr., and Edward M. West are to be treated in the same manner as the issue of Mary Mecke. They are similarly treated as to their interest in the principal, and it would appear that they should be treated alike as to income. Two classes of persons to be benefited appear to have been in testatrix's mind, to wit: On the one hand, Martha McGrath and Mary Mecke, upon whose lives the principal estate is dependent; and, on the other hand, the children of J. Mortimer West, Jr., Edward M. West and Mary Mecke. This brings the will within the construction adopted in Rowland's Estate, 141 Pa. 553, and 151 Pa. 25; Huddy's Estate, 257 Pa. 528, and Maxwell's Estate, 261 Pa. 140. As was said by Kephart, J., in Huddy's Estate, in the opinion of the Superior Court, affirmed by the Supreme Court: "The other view of the case diverts it to strangers and subjects it to possible liability for the debts of those who are alien to the testator's blood and strangers to his bounty." (Which is especially true in this case, as the gifts of

Reeves's Estate.

income to the children of J. Mortimer West, Jr., and Edward M. West are not liable for their debts.)   "If the distributees are treated as two classes, viz., the children of Mrs. Fagan and her grandchildren, as was done in Rowland's Estate, no question of survivorship arises nor is there an intestacy.   The deceased legatee had a vested interest in the income for her own life."

The Auditing Judge, therefore, finds that Reid Lonsdale West had a life estate in the income, and upon his death it vested in the five surviving children of J. Mortimer West, Jr., and Edward M. West.

*C. Brewster Rhoads*, for exceptions; *James M. West*, contra.

LAMORELLE, P. J., Nov. 1, 1926.—The scheme of disposition and distribution disclosed by the will and expressed in apt language by testatrix clearly shows that the interests of the children of J. Mortimer West, Jr., and Edward West in income must be limited by the lives of such children, though she does not *in terms* create equitable life estates.

She gives her entire residuary estate to her executor, in trust, to pay the net income in equal shares to Martha McGrath and Mary Mecke for life, without liability for their debts, "without the power of disposal by them by way of charge or anticipation."   On the death of Martha McGrath, her share of the income is given to the *living* children of J. Mortimer West and Edward West, "subject to the same restrictions as to liability for debts until the termination of this Trust. . . ."   On the death of the survivor of the two original *cestui que trusts*, the *corpus* is given to the children of the two Wests *then* living, and to the issue of any then deceased.

Martha McGrath is dead.   The trust, however, continues because Mary Mecke survives.

At the time of the death of Martha McGrath there were six *living* children of the Wests, and they have been in receipt of one-half of the income since that time.   One of them, Lonsdale West, is now deceased, without issue.   The question presented to the Auditing Judge relates to the disposition of the income thus released.   He has held that the other five take that share.   The exceptants are the personal representatives of the deceased *cestui que trust;* their contention is that this share, one-sixth of one-half, passes to *his* next of kin for the duration of the trust.

We are of opinion that the Auditing Judge correctly interprets the will. The case in many respects resembles Huddy's Estate, 63 Pa. Superior Ct. 34, 257 Pa. 528.   In that case there was a spendthrift clause, and this fact was one of the reasons for the refusal to continue the income for the benefit of personal representatives of deceased legatees—persons manifestly not contemplated by testatrix.

Moreover, to pass the income to the administrator of a deceased *cestui que trust* would be in the teeth of the wording of the will, which prohibits a *cestui que trust* from disposing of his share of income by way of charge or anticipation.   It could not pass by will; an involuntary disposal is, in the circumstances, to be treated in a similar way.

It is possible that there will be found some conflict among the many decisions in cases of this character; but, after all, it is always a question of intention, and in the instant case the testatrix, in limiting income to *living* children, clearly expresses a purpose of benefiting *a class*, the composition of which is defined, not only as of the time of the death of Martha McGrath, but also afterwards in the gift of principal, subject only to substitution in event of the death of a member of that class leaving descendants—and Lonsdale West left no issue.

Reeves's Estate.

The Auditing Judge has referred at length to many cases in point, *pro* and *con;* we, therefore, deem it unnecessary to extend this opinion, as its purpose is simply to stress what appears to us to mark the line of demarcation between equitable life estates and those *pur autre vie.*

Accordingly, all exceptions are dismissed and the adjudication is confirmed absolutely.

THOMPSON, J., did not sit.